IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WADE D. TARVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-258-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Wade D. Tarver requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

---

[1]  Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born December 31, 1966 and was forty-two years old at the time of the administrative hearing. (Tr. 25, 88). He completed the seventh or eighth grade (Tr. 25, 112), and has worked as a mechanic/equipment operator (Tr. 20, 38). The claimant alleges inability to work since July 1, 2006, due to high blood pressure, kidney damage, and brain damage from strokes, depression, and seizures. (Tr. 88, 106).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 14, 2007. His application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 26, 2009. The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of light work, *i. e.*, he can occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and stand/walk/sit for six hours in an eight-hour workday, but perform only simple and repetitive tasks, and have no more than incidental contact with the public. (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could do in the national and

regional economies, *e. g.*, assembler, hand packager, and miscellaneous hand worker. (Tr. 20-21).

## Review

The claimant contends that the ALJ erred (i) by failing to properly consider the opinions of the state agency physicians; and (ii) by ignoring probative medical evidence, including a Global Assessment of Functioning ("GAF") scores.  Because the ALJ does appear to have ignored probative evidence regarding the claimant's mental impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant had the severe impairments of hypertension, history of encephalopathic seizures, controlled small vessel ischemic changes in the brain (possible cerebrovascular accident), depression, and anxiety.  (Tr. 14).  In September 2006, claimant saw a state examining physician, Dr. Baha Abu-Esheh, who recommended that the claimant immediately see his treating physician or the emergency room because his blood pressure was so high.  (Tr. 201-03).  That same month, Dr. Nicole Washington performed a mental status examination on the claimant, and concluded that the claimant might be a good candidate for vocational rehabilitation, that he had a fair prognosis, and that he was unable to maintain employment due to his physical limitations. (Tr. 249-52).  Cynthia Kampschaefer, a state examiner, performed a psychiatric review technique in November 2006 and found that the claimant had appropriate eye contact, logical and organized though processes, typical speech, fair judgment, and a restricted affect.  (Tr. 207-19).

On July 18, 2007, the claimant suffered a seizure after presenting at the hospital with complaints of dizziness and vomiting. (Tr. 285-86). At the time of the seizure, the claimant tested positive for marijuana and benzodiazepines, and had apparently also been drinking orange juice and vodka. (Tr. 297-302). The claimant was counseled as to his substance abuse, and Social Service provided a consultation on available 12-step programs. (Tr. 285).

On December 20, 2007, psychologist Theresa Horton performed a mental status examination of the claimant. (Tr. 354-57). She noted that the claimant's eye contact was "quite intense," and he had an "odd" stare, but that his speech was normal, his attitude was friendly, and he was cooperative. (Tr. 356). Dr. Horton diagnosed the claimant with major depressive disorder recurrent severe, and concluded that the claimant appeared "capable of understanding and managing simple instruction and tasks, but not more complex. His thought processes appear slowed, and likely this will affect his level of productivity. He does appear capable of adjusting into social settings, but seems quite hypervigilant at times currently, and this will likely interfere with adjustment into occupational settings." (Tr. 357). Dr. Phillip Massad completed a psychiatric review technique as to the claimant, noted that the claimant had depression secondary to medical problems, and concluded that the claimant had moderate limitations in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 375-87). The next month, Dr. Massad completed a mental RFC, finding that the claimant could do simple work, had spotty concentration and attention, could not

-5-

deal with the public, and had possible mild paranoia.  He also stated that the claimant did not have significant impairment of concentration and attention.  (Tr. 395-97).

On October 3, 2008, the claimant visited Green County Behavioral Health Services, Inc.  There, a licensed professional counselor (Ms. Self) assessed the claimant with a Global Assessment of Functioning ("GAF") score of 44, and noted that the claimant appears "to be experiencing symptoms of depression, anxiety, anger, a/v hallucinations, paranoia, and poor impulse control."  (Tr. 405).  In fact, the claimant actively participated in the assessment, and attempted to leave when he became angry at one point.  (Tr. 405).  The assessment indicated that the claimant's prognosis was "guarded in his mood lability and frustration with services."  (Tr. 405).  On the following page, a box is checked next to "Moderate Complexity – 400 (Initial)," indicating that the Mental Health Service Plan was initiated that day.  (Tr. 406).  The other two options were "Low Complexity – 300 (Review)" and "Annual."  (Tr. 406).

At the administrative hearing, the claimant testified that he had been hospitalized for high blood pressure and a seizure, that he was presently on seizure medications, and that he experiences numbness in his hands and feet.  (Tr. 28).  Additionally, he stated that he sleeps at least 16 hours a day, that he frequently experiences dizziness and headaches, and that he struggles with his memory.  (Tr. 29-31).  He further stated that although he was legally allowed to drive, he did not like to because his vision causes him problems and he worries about blacking out or having another seizure.  (Tr. 33).  The claimant's wife testified that they used to go camping as a family, but do not anymore, and that the

claimant has mood swings and appears hypervigilant about activity around their house. (Tr. 35-36).

In his written opinion, the ALJ summarized the claimant's testimony and function reports, the claimant's wife's testimony, as well as the medical evidence. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (Tr. 17). The ALJ also gave little weight to the testimony of the claimant's wife, noting it was "what one would expect from a spouse or family member." (Tr. 17). As to the claimant's mental impairments, the ALJ summarized Dr. Horton's assessment, which "noted the claimant was capable of adjusting into social settings but was hyper vigilant at times which would interfere with adjustment into occupational settings." (Tr. 18). The ALJ also mentioned that Green County Behavioral Health Services assessed the claimant as "moderate, not severe. Dr. Self assessed the claimant with depression, anger, anxiety, nightmares, hallucinations, and difficulty sleeping" (Tr. 18), but did not discuss the GAF score of 44 assigned by Ms. Self. The ALJ thus concluded that "the claimant's treating physicians did not place any functional restrictions on his activities that would preclude light work activity with the previously mentioned restrictions. The claimant's daily activities appear restricted, but these restrictions are self imposed." (Tr. 20).

"Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to

-7-

keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947.  Thus, the ALJ should have discussed the low GAF score assigned by Ms. Self and determined whether it was due to occupational factors.  *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings.  We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted].

     The Commissioner argues that Ms. Self is not an acceptable medical source, but the ALJ *was* required to consider her opinion.  *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").  The relevant factors for evaluating "other source" opinion evidence are:  (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether the claimant's impairment is

related to a source's specialty or area of expertise; and, (vi) other supporting or refuting factors. *Id.* at *4-5; 20 C.F.R. § 404.1527(d). *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original].

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). Consequently, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

DATED this 28th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma